UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Criminal No. 3:22-cr-00022-GFVT-EBA-1 |
| V. | ) ) | |
| TRENTON LAYNE TAYLOR, | ) ) ) | **OPINION & ORDER** |
| Defendant. | ) ) | |

*** *** *** ***

This matter is before the Court on a Motion to Dismiss the Indictment and the Superseding Indictment by Defendant Trenton Layne Taylor. [R. 24.] Mr. Taylor is a convicted felon. He pled guilty in state court to second-degree burglary. Now, facing a charge for possessing a firearm despite his felony conviction, Mr. Taylor argues that the Second Amendment prevents the Government from disarming him. However, the Second Amendment is a right that America inherited from England, and, as such, it carries with it traditional limitations developed over time. The early states that adopted the Second Amendment understood that legislatures can disarm those that they deem to be a danger to public safety. Because of the risks inherit in burglary, Mr. Taylor presents similar threats to the public. Consequently, the Court **DENIES** his Motion to Dismiss the Indictment **[R. 24]**.

**I**

In July 2021, the Circuit Court in Carroll County, Kentucky, convicted Mr. Taylor of two felonies. [R. 24-2 at 1–2.] Of relevance to this proceeding, he pled guilty to Second Degree

Burglary, a Class C felony carrying a maximum sentence of ten years. *Id.*; Ky. Rev. Stat. Ann. §§ 511.030, 532.060(2)(c).

On December 1, 2022, a federal grand jury charged Mr. Taylor with three counts of unlawfully possessing a firearm. [R. 18 at 1–3.] The grand jury found probable cause to believe that Mr. Taylor violated 18 U.S.C. § 922(g)(1), which criminalizes the possession of firearms by any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year."

On December 7, Mr. Taylor moved to dismiss the indictment, arguing that it violates his Second Amendment Rights. [R. 24 at 1.] Rather than facially challenging 18 U.S.C. § 922(g)(1), Mr. Taylor argues that the statute is unconstitutional as applied to him. *Id.* Specifically, Mr. Taylor suggests that as a non-violent felon, Congress cannot disarm him without violating the Second Amendment. *Id.*

## II

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008) and in *McDonald v. Chicago*, 561 U.S. 742 (2010), the Supreme Court clarified that this protection guarantees "the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *New York State Rifle & Pistol Assoc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022). Recently, the Court held that the Second Amendment also protects "an individual's right to carry a handgun for self-defense outside the home." *Id.* In doing so, the Court replaced the prevailing test for reviewing laws that restrict the right to bear arms. *Id.* at 2125–26. Previously, federal courts

applied a two-step approach that assessed history and then conducted means-end scrutiny. *Id.* at 2125.

*Bruen* dispenses with the scrutiny analysis and clarifies that only historical analysis is appropriate in Second Amendment cases. *Id.* at 2126. The Second Amendment's meaning at the time that it was enacted defines its scope. *Id.* at 2126, 2137. "Only if a regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified control.'" *Id.* at 2126.

### A

This Court considered a similar challenge to 18 U.S.C. § 922(g)(1) in *United States v. Goins*, No. 5:22-cr-00091-GFVT, 2022 WL 17836677 (E.D. Ky. Dec. 21, 2022). Therein, the Court applied *Bruen's* framework and assessed the history relevant to the Second Amendment to find an analog for Section 922(g)(1). *Id.* at *7–12. From a deeply rooted English common law tradition that the colonies inherited, the Court found that the Second Amendment does not prevent Congress from disarming those that it deems to be a danger to public safety. *Id.* at *12.

That tradition begins with the 14th Century Statute of Northampton, which prohibited Englishmen from bringing "force in affray of the peace . . . upon pain to forfeit their Armour to the King . . . ." *Id.* at *10 (quoting *Bruen*, 142 S. Ct. at 2139). Overtime, the statute fell into disuse but not complete irrelevance. *Id.* (quoting *Bruen*, 142 S. Ct. at 2140–41). During a 17th century trial, a court summarized the state of the law as "that the act of 'go[ing] armed to terrify the King's subjects' was 'a great offence at the common law' . . . ." *Id.* (quoting *Bruen*, 142 S. Ct. at 2141). Around this time, Parliament embodied that tradition in an act that permitted officers of the Crown to "disarm anyone they judged to be 'dangerous to the Peace of the Kingdom.'" *Id.* (quoting *Kanter v. Barr*, 919 F.3d 437, 456 (7th Cir. 2019) (Barrett, J.,

3

dissenting)). Indeed, founding-era, American legislatures similarly used this tradition to "categorically disarm[] groups whom they judged to be a threat to the public safety." *Id.*

So, history comports with common sense. While the Second Amendment creates a right to bear arms, its scope is limited by Congress's traditional power to disarm people that pose a threat to public safety. And Congress can base the decision to disarm a class of people upon modern judgments as to "the categories of people whose possession of guns would endanger the public safety . . . ." *Id.* at *12 (quoting *Kanter*, 919 F.3d at 464 (Barrett, J., dissenting)).

Neither the Government nor Mr. Taylor agrees with the Court's reading of history. For his part, Mr. Taylor's primary complaint is that this type of historical analysis relies too much on England's history, rather than America's. [R. 24-1 at 11.] "English and colonial laws and practices . . . are not reasonable analogues to § 922(g)(1), because the American Revolution, our Constitution and the Bill of Rights renounced and rejected them. It cannot be that the scope of the Second Amendment (or other constitutional rights) can be defined by actions of the English Crown and Parliament that provoked our Revolution." *Id.* As to that, Mr. Taylor's quibble is with the Supreme Court of the United States, not this Court. *See Bruen*, 142 S. Ct. at 2138–42 (assessing English history); *Heller*, 554 U.S. at 592–93 (assessing the period between the Stuart Restoration and the Glorious Revolution).

The Government also feels the Court decided *Goins* incorrectly. It now seeks to brief the Court on aspects of the historical record that it neglected to raise in *Goins*. The United States relies on founding era laws that disarmed criminals convicted of "various non-violent hunting and trespassing offenses." [R. 28 at 17.] The Government argues that these laws are evidence that founding era legislatures possessed the power to disarm persons convicted of serious crimes, regardless of whether they posed a danger to the public. *Id.* The Government argues for a

4

broader limitation on the Second Amendment's scope than the Court found in *Goins*. Specifically, it contends that Congress can categorically disarm all felons regardless of whether their crimes indicate that they endanger the public. *Id.* at 18.

The Court will not reevaluate its historical analysis in *Goins* at this time. The Government's briefing is based on a recent decision by the Third Circuit. *See id.* at 17 (relying on *Range v. Att'y Gen.*, 53 F.4th 262 (3d Cir. 2022), *vacated*, 2023 WL 118469 (3d Cir. Jan. 6, 2023) to catalogue early American laws that allegedly disarmed non-violent offenders). But the Third Circuit vacated this panel decision interpreting 18 U.S.C. § 922(g)(1) under *Bruen* and opted to rehear the case en banc. *Range v. Att'y Gen.*, No. 21-2835, 2023 WL 118469, at *1 (3d Cir. Jan. 6, 2023). Because the persuasive value of that case is currently in limbo, the Court declines to reconsider its decision in *Goins* based on *Range's* interpretation of history.

Regardless, the United States' concerns with the Court's decision in *Goins* have no bearing on the outcome of Mr. Taylor's motion. Under either the Government's broad definition of Congress's power to disarm felons or under the Court's slightly stricter rule, Mr. Taylor's Second Amendment rights are not violated.

**B**

Having committed a burglary, Mr. Taylor presents the exact sort of danger to the public on which a legislature can base a disarmament law. A Kentucky court convicted Mr. Taylor of second-degree burglary. [R. 28 at 18.] Under Kentucky law, "[a] person is guilty of burglary in the second degree when, with the intent to commit a crime, he or she knowingly enters or remains unlawfully in a dwelling." Ky. Rev. Stat. Ann. § 511.030(1) (West 2023). The term dwelling refers to "a building which is usually occupied by a person lodging therein." *Id.* § 511.010(2).

Both Congress and the Kentucky General Assembly consider this crime to be dangerous. As the commentary to Kentucky's penal code indicates, "burglary is designed to encompass all unlawful intrusions which are accompanied by alarm and danger to occupants." *Litton v. Commonwealth*, 597 S.W.2d 616, 617 (Ky. 1980). Second degree burglary focuses on unlawful entry into dwellings because "the potential for physical injury is made greater by the presence of other persons who may be encountered in the process of the burglary." *Id.* at 618. As the Commonwealth has long recognized, the act of unlawfully entering someone's home creates a uniquely dangerous scenario because of the likelihood that the occupants will defend themselves. *See Gray v. Combs*, 30 Ky. 478, 481 (1832) (discussing a heightened privilege of self-defense against burglars under the common law).

Congress is also aware of the danger that burglars create. The Armed Career Criminal Act creates heightened sentences for felons who possess firearms and have three prior convictions for violent felonies or serious drug offenses. 18 U.S.C. § 924(e)(1). One of the statute's definitions of a violent felony relies on four enumerated crimes that serve as examples of "conduct that presents a serious potential risk of physical injury to another . . . ." *Id.* § 924(e)(2)(B)(ii). The closing words of this definition are known as the Act's residual clause. *Johnson v. United States*, 576 U.S. 591, 594 (2015). While the Supreme Court has invalidated the residual clause, the four enumerated crimes still require an increased sentence. *Id.* at 584–85.

Burglary is one of these crimes. 18 U.S.C. § 924(e)(2)(B)(ii). Congress's decision to list burglary as a prior conviction that specifically merits a heightened sentence as a violent crime is instructive. Congress phrased the residuary clause so that it applied to more crimes than could be specifically enumerated. *See Johnson*, 591 U.S. at 594 (discussing the Court's attempts to apply the residual clause to various crimes). While that vagueness ultimately rendered the

residual clause unconstitutional, *id.* at 601–02, the use of burglary as an example of a crime that merits an increased sentence for illegally possessing a firearm shows Congress's certainty that burglars pose a danger to the public. Burglary creates "the possibility of a face-to-face confrontation between the burglar and a third party . . . who comes to investigate." *James v. United States*, 550 U.S. 192, 203–04 (2007), *overruled by Johnson v. United States*, 576 U.S. 591 (2015).

Against these relatively modern, legislative judgments, Mr. Taylor argues that *Bruen* compels the Court to undertake a purely historical analysis. [R. 29 at 2–4.] "Burglary . . . was considered at common law a non-violent property crime. . . . This is the determinative point, since the inquiry is historical . . . ." *Id.* at 2–3 (internal citations omitted). Mr. Taylor complains that permitting modern legislatures to determine which crimes endanger the public subjects the Second Amendment to the whims of a majority faction. *Id.* at 3. Mr. Taylor's argument fails for two reasons. First, *Bruen* does not shackle Congress to eighteen century sensibilities. Second, contrary to Mr. Taylor's characterization, burglary has an ancient and consistent pedigree as a crime that endangers the public by inciting violence.

*Bruen* creates an objective method by which courts can interpret the Constitution using history. To do so, a reviewing court searches history for a burden on the right to bear arms that is analogous to the modern law at issue. *Bruen*, 142 S. Ct. at 2132. Where Congress seeks to redress a problem that existed at the founding, that inquiry can be quite straightforward. *Id.* at 2131. But this is not so where cases implicate "unprecedented societal concerns or dramatic technological changes" because "[t]he regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders . . . ." *Id.* at 2132.

Luckily, the Founders drafted a Constitution and Second Amendment that are "intended to endure for ages to come, and consequently to be adapted to the various crises of human affairs." *Id.* (quoting *McCulloch v. Maryland*, 4 Wheat. 316, 415, 4 L.Ed. 579 (1819)). Although the meaning of the Constitution is fixed by the understanding of those who ratified it, courts must still apply it to circumstances that the Founders could not have anticipated. *Id.* So, judges look to history to find analogs to the present that are "relevantly similar." *Id.* To determine whether regulations are "relevantly similar" courts can look to "how and why the regulations burden a law abiding citizen's right to armed self-defense." *Id.*

In this case, the issue of how Section 922(g) burdens Mr. Taylor's rights is simple. It categorically disarms him. The relevant inquiry is why Congress seeks to take away his right to bear arms. As discussed in *Goins*, the traditional justification that the Founders would have understood is that Mr. Taylor poses a danger to public safety. *Goins*, 2022 WL 17836677, at *12. *Bruen* then requires the court to "apply faithfully the balance struck by the founding generation to modern circumstances . . . ." *Bruen*, 142 S. Ct. at 2133 n.7. It does not require the Court to find "a historical twin" for the burden imposed on Mr. Taylor. *Id.* at 2133. So, contrary to Mr. Taylor's belief, the inquiry is not purely historical.

Regardless, even if the Court accepted Mr. Taylor's contention and only looked to the history of the common law to assess whether burglars can be disarmed, his argument would fail. The common law punished burglary with death. *United States v. Coombes*, No. 22-cr00189-GKF, 2022 WL 4369056, at *10 (N.D. Okla. Sept. 21, 2022). Britain continued to execute burglars well beyond the founding period, as late as 1836. John H. Langbein, History of the Common Law 617 (2009). Burglary carried such a heavy punishment because it was considered "a very heinous offense: not only because of the abundant terror that it naturally carries with it,

8

but also as it is a forcible invasion and disturbance of the right of habitation." *Coombes*, 2022 WL 4369056 at *10 (quoting 4 William Blackstone, *Commentaries*, *233). Indeed, the American colonies inherited Britain's tradition of executing burglars. *Id.* at *11. While Mr. Taylor may be correct that burglary is traditionally a property crime, the danger inherent in burglary has historically been understood to stem from the possibility that the occupants of the dwelling might defend themselves, not from the mere act of breaking and entering. [R. 29 at 2]; *See Gray*, 30 Ky. at 481 (refusing to insulate "the robber, the burglar and the nocturnal thief [from] an unnecessary restraint of the honest citizen's natural right of self defence.").

So, the historic understanding of burglary comports with the modern reason why Section 922(g)(1) burdens Mr. Taylor's rights. Both founding era and modern legislatures recognize that the act of burglary creates the risk of retaliation or self-defense from the occupant. Congress's motive for disarming Mr. Taylor is not just relevantly similar to the historic concern with burglars; in fact, the two are identical.

### III

Congress can disarm people that pose a danger to the public without violating the Second Amendment. Whether one looks to modern or historical assessments, burglars who, like Mr. Taylor, broke into an occupied home are always regarded as similarly dangerous. Section 922(g)(1) does not violate Mr. Taylor's rights. Accordingly, for these reasons, Mr. Taylor's Motion to Dismiss the Indictment **[R. 24]** is **DENIED**.

This the 31st day of January 2023.

                                                    Gregory F. Van Tatenhove
                                                    United States District Judge